The evidence sustains the verdict.
 DECIDED SEPTEMBER 20, 1944. REHEARING DENIED OCTOBER 19, 1944.
Harvey A. Calhoun and his brother, George Calhoun, were jointly indicted, tried together, and both convicted of larceny from the *Page 624 
person. Harvey filed a motion for a new trial; George did not. The motion was overruled, and this judgment is assigned as error. The evidence was circumstantial, and the only question presented for decision is whether or not it is sufficient in law to sustain the verdict beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis save that of the guilt of the accused. Briefly and in substance the evidence is: On October 22, 1943, G. P. Evans was on duty as night policeman in the town of Locust Grove, in Henry County, Georgia. A large truck broke down with tire trouble. George Calhoun was the driver, and his brother Harvey, the defendant here, was accompanying him on the trip. They had with them a woman companion whom they had "picked up" on the road as they left Atlanta. The woman is not identified in the record, and did not testify. It was about 8 o'clock in the evening when the trouble with the truck happened within the city limits of Locust Grove. George Calhoun went to Jackson, Georgia, to obtain assistance. While there he borrowed $1.50 from a truck driver, an employee of the same line for which he worked. Before leaving for Jackson he attempted to obtain help in Locust Grove to right the truck, and made the statement that whoever helped would have to do so on credit. The truck was not repaired, and the Calhouns and the woman spent the night in Locust Grove. The weather was cold and disagreeable, and the policeman permitted them to take sanctuary in his quarters, where, during the night he made coffee for them. Included in the truck's cargo were a number of cases of whisky. There were two cases more than the bill of lading called for. The defendants broke into one of them and removed from it four quarts of whisky. The policeman did not drink any coffee until about four o'clock the next morning, and testified that he did not drink any whisky up to that time, and that if he drank any whisky after that he did not recall it. The evidence reveals that the Calhouns and the woman consumed more than a quart. The policeman made his rounds regularly until about four o'clock, at which time he was preparing to go off duty, and he then drank some coffee. While the policeman was on his rounds the Calhouns and the woman remained in the police headquarters. The policeman testified that shortly after four o'clock that morning he lost consciousness, and did not regain consciousness until the next afternoon about 3 o'clock. He lived outside the *Page 625 
city limits. About "sunup," George Calhoun was seen assisting him from town toward his home. In the late forenoon he was discovered lying a short distance from the road unconscious. He had in his hip pocket an open quart bottle containing about a pint of whisky. His clothing was saturated with whisky. There is also evidence to the effect that when he was on his way toward his home accompanied by George Calhoun he offered a citizen of the town a drink of whisky. He was carried home unconscious and a doctor was summoned, who, after examining him stated that he had been doped. While the doctor did not testify on the trial, this evidence was admitted without objection. Before losing consciousness, the policeman had in his possession sixty-two dollars in bills consisting of one twenty-dollar bill, one ten-dollar bill, thirty-two one-dollar bills, and some change. He also had a pistol and a blackjack. When he was found by the roadside, all were gone. When the sheriff arrested the defendants, Harvey A. Calhoun had in his possession eighteen dollars, consisting of one ten-dollar bill and eight dollars in ones. George Calhoun had thirty-three dollars, consisting of twenty-eight one-dollar bills and one five-dollar bill. The record also shows that the Calhouns and the woman ate breakfast the following morning at a restaurant in Locust Grove, and there obtained change for a twenty-dollar bill. From this time on the woman drops out of the picture so far as the record goes. When the defendants were arrested both bitterly denied having seen the policeman at all, and continued in this denial until a citizen of Locust Grove identified one of them as being the person who accompanied the policeman toward his home. The explanation for their denial was that they wanted to shield the policeman from the results of his conduct. The policeman testified that the twenty-dollar bill for which change was obtained at the restaurant was the twenty-dollar bill which he had had in his possession; that the ten-dollar bill taken from Harvey A. Calhoun was likewise identified as the bill of that denomination which the policeman had had. He identified these bills from certain perspiration splotches which had been made while they were in his possession. He testified that he perspired freely, and the two bills stuck together; that he took them from his purse and dried them in the sun. A few days before the occurrence he had a citizen of Locust Grove cash a check for thirty-two dollars. It was testified both by the policeman *Page 626 
and by the person who cashed the check, that a number of the one-dollar bills had a crease on the corners from having been carried in the purse of the person who cashed the check. Some of the one-dollar bills obtained from the defendants after being arrested were identified by these creases. The pistol and blackjack were not recovered.
Counsel earnestly contend that the evidence is insufficient to sustain a verdict against the plaintiff in error. This contention is grounded largely, if not altogether, on the position that since the evidence shows that George Calhoun, and not his brother Harvey, was the person who was seen accompanying the policeman home, there is not sufficient evidence to sustain the conviction of Harvey. With this contention we can not agree. The State's case against Harvey is not dependent upon the fact that the articles were taken from the policeman by the person who assisted him toward his home. The evidence warrants, and the jurors were authorized to infer, to the exclusion of every other reasonable hypothesis, that the articles were taken from the policeman some time between four o'clock and "about sunup" the next morning by the defendants acting with a common intent and purpose to steal the articles off the person of the policeman. This conclusion is warranted by all the facts and circumstances in the case to the exclusion of every other reasonable hypothesis. To reach any other conclusion we would have to engage in the wildest sort of remote speculation.
Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.